## PennDOT v. Miller

*Chet Karas, assistant counsel,* for PennDOT.
*James C. Blackman,* for appellant.

WOLFE, *P.J.,* July 6, 1992—The sole issue in this case is if defendant's refusal to submit to chemical testing of his blood after his arrest for operating while under the influence under section 3731 of the Motor Vehicle Code was justified. For the reasons hereinafter stated we hold it was not.

Defendant was arrested following a traffic accident on February 28, 1992, and was transported to the Warren General Hospital for a blood extraction to determine his blood alcohol content.* At the hospital, defendant agreed to submit to a blood alcohol test and was given the hospital form for his signature. After reading it defendant refused to take the test because of the release provision in the form which reads:

---

* The parties stipulated the arresting officer had reasonable grounds to believe defendant was under the influence of alcohol, that defendant was requested to submit to a chemical test and warned of the consequences of a refusal to submit to the test.

"Part 2—*Consent to Blood Test*

"(1) I agree to the taking of a blood sample from me for a police investigation. I do not have hemophilia or a heart condition, and am not using any anticoagulant drugs. I have been told about the method for taking a blood sample and of the possible risks involved and that the results of the test will be made available upon request to me and to the police or any other government agencies. *I release the hospital and any persons involved with the taking of the blood sample from any liability arising from the taking of blood and for all ill effects that may result from the blood test.*" (emphasis added)

Upon defendant's refusal, the offensive language, as Miller perceived it, was crossed out by the admissions clerk. Miller again refused to sign the consent unless higher personnel of the hospital accept liability in the event he should suffer from AIDS or hepatitis.

According to defendant's testimony, he requested the clerk to have the hospital director initial the release form with the eradicated sentence, and if so he would submit to the test; however, again, if the hospital would be responsible for his concern of AIDS or hepatitis.

The Commonwealth relies on a string of appellate cases that anything substantially less than an unqualified, unequivocal consent to have chemical testing is tantamount to a refusal. *PennDOT, Bureau of Traffic Safety v. Mumma,* 79 Pa. Commw. 108, 468 A.2d 891 (1983).

Defendant relies on *Maffei v. PennDOT*, 53 Pa. Commw. 182, 416 A.2d 1167 (1980). There, the court held a motorist arrested for operating while under the

influence could not be compelled to sign a "waiver of rights" so as to constitute a refusal to submit to a blood sample.

"Although the law is clear that anything substantially short of an unqualified assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so, *McMahon, supra*, 39 Pa. Commw. at 264, 395 A.2d at 320, nothing in the Vehicle Code requires a driver, as part of his consent to a blood test, to execute a document limiting or waiving the testor's liability."

Hence, the Commonwealth Court held that the Commonwealth's evidence established that the blood test was "tied to execution of the liability release" and reversed the trial court's suspension of *Maffei's* license suspension.

Our reading of the cases addressing this issue does not compel a conclusion *Maffei v. PennDOT, supra*, is applicable here.

In *Maffei*, the court cited the Vehicle Code as does the Commonwealth instantly, 75 Pa.C.S §1547(i):

"No physician, nurse or technician or hospital employing such physician, nurse or technician, and no other employer of such physician, nurse or technician shall be civilly liable for withdrawing blood or obtaining a urine sample and reporting test results to the police at the request of a police officer pursuant to this section."

The *Maffei* court distinctly said it was "unable to analyze the scope of that statutory immunity."

Instantly, the offensive language was effectively deleted. The admissions clerk is an agent or employee of the Warren General Hospital and was acting within

the scope of her employment by striking out the offensive language. Notwithstanding, it is our view since the hospital and its employees are immune as a matter of law from civil liability, the ostensible offense language is innocuous. The release of liability language utilized by the hospital simply tracks the statutory immunity language. So, too, defendant's demand that "higher personnel" execute the consent form deleting the release of liability would not, as a matter of law, lend support to defendant's position, to-wit, in the event he suffered AIDS or hepatitis or any other untoward disease, the hospital would therefore be liable to him.

It should be apparent to any objective viewing of defendant's request that defendant effectively is requiring the hospital to waive its immunity from liability by his demand in the event he contracted a disease the hospital would be financially liable to him. A close reading of defendant's testimony is simply not that he would agree to take the test if the language were authoritatively deleted, but rather he would take the test if the hospital would be responsible to him for any contracted disease.

For these reasons we hold defendant did not give an unqualified consent and enter the following order:

## ORDER

And now, July 6, 1992, the defendant's appeal from suspension of his motor vehicle license is dismissed.